# PAGE *v*. DISTRICT OF COLUMBIA.

INTOXICATING LIQUORS; RESTAURANTS IN THE CAPITOL BUILDING.

The act of Congress of March 3, 1893, Chap. 204, regulating the sale of intoxicating liquors, does not apply to the Congressional restaurants located and conducted in the Capitol building under the rules and regulations of Congressional committees for the use and convenience of members of Congress; and the persons conducting such restaurants are not required to take out licenses under such act.

No. 1227. Submitted October 15, 1902. Decided November 4, 1902.

IN ERROR to the police court of the District of Columbia. *Reversed.*

The COURT in the opinion stated the case as follows:

This case is brought into this court by writ of error to the police court of the District of Columbia. The facts are few and not controverted. The defendants were prosecuted for and convicted in the police court of an alleged violation of the liquor license law of the District, and were sentenced on the conviction under the law, whereupon they sued out a writ of error from this court.

There were two informations filed,— one against the defendant Page, and the other against Page and Coffin,— and which informations were consolidated and tried together, but separate convictions and judgments were entered. The informations charge that the defendants, between the 2d day of January and the 30th day of April, 1902, in the city of Washington, did engage in the sale of intoxicating liquors in quantities less than five gallons at the same time, to be drunk on the premises, without first having obtained a li-

cense so to do, contrary to the provisions of the act of Congress entitled "An act regulating the sale of intoxicating liquors in the District of Columbia," approved March 3, 1893.

The informations do not designate any particular place or locality within the District where the sales took place. But, by agreement, it is admitted that the defendants are the keepers of the restaurants in the Capitol building of the United States, in the city of Washington, under the authority of the two houses of Congress; that one of said restaurants is kept in the Senate wing of the Capitol building, and the other in the House of Representatives wing of said building; and that said restaurants are both intended for the use and convenience of the members of Congress, but to which the public is admitted.    The said restaurants are managed and conducted by the defendants under the direction and by the authority of certain committees; — one, that of the Senate wing of the Capitol, by the Committee of the Senate on Rules, and that of the House wing of the Capitol, by the Committee of the House on Public Buildings and Grounds.

The Thirty-fourth Standing Rule of the Senate, relating to the restaurant, provides that " It shall be the duty of the Committee on Rules to make all rules and regulations respecting such parts of the Capitol, its passages and galleries, including the restaurant, as are and may be set apart for the use of the Senate and its officers, to be enforced under the direction of the presiding officer."

The rule of the House of Representatives upon the subject is in the form of resolutions of the House,— one passed December 16, 1867, and another April 9, 1869.    The first of these is as follows:  " *Resolved,* That the subject of leasing the restaurant and prescribing the rules under which it shall be kept is hereby committed to the Committee on Revisal and Unfinished Business, with full power to make such regulations as may to them seem expedient; and all resolutions heretofore passed relating thereto are hereby repealed." And the second of these resolutions is as follows:  " *Resolved,*

That the House restaurant be placed in charge of the Committee on Public Buildings and Grounds, with the same powers heretofore possessed by the Committee on Revisal and Unfinished Business."

It was proved by a witness produced in support of the prosecution, that, on the 25th day of April, 1902, while visiting the Capitol building, he bought a bottle of beer at the restaurant of the House of Representatives in said building, and paid for it, and then and there drank it with his lunch; and that, on the 30th day of April, 1902, while on a like visit to the Capitol building, he bought a bottle of beer at the Senate restaurant in said building, and paid for the same, and then and there drank it with his lunch.    This was all the proof offered as to the violation of the statute.

On these facts, the defendants objected to the informations filed against them, and excepted to the power and jurisdiction of the court to try and convict them under the statute, for selling the beer to the witness, without having applied for and obtained a license for so doing.    But the court overruled the objection, and proceeded to try and convict the defendants, and sentenced them to pay a fine in each case of $300, or in default of the payment of such fine to stand committed to the workhouse for the term of sixty days.

*Mr. George C. Hazelton* for the plaintiffs in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. Edward H. Thomas,* Assistant, for the defendant in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The sole question presented by the bill of exception taken by the defendants is this, whether the act of Congress of 1893, Ch. 204, regulating the sale of intoxicating liquors, applies to the Congressional restaurants located and conducted in the Capitol building, under the rules and regula-

tions of Congressional committees, for the use and convenience of members of Congress?

The license act of 1893, Ch. 204, is very broad in its terms. It declares that no person shall sell, offer for sale, or keep for sale or traffic in, barter, or exchange for goods, in the District of Columbia, any intoxicating liquor, except, etc. (the exception having no application to this case), without first applying for and obtaining a license to carry on such business, under the rules and regulations therein prescribed. The licenses authorized by the act are divided into two classes; — wholesale liquor licenses and barroom licenses; and every place where distilled, malt, or fermented wines, liquors, or cordials are sold in quantities as prescribed for retail dealers by section 3244, Rev. Stats. United States, to be drunk on the premises, shall be regarded as a barroom; and the possession of malt, distilled, fermented, or any intoxicating liquor with the means and appliances for carrying on the business of dispensing the same to be drunk when sold, shall be *prima facie* evidence of a barroom within the meaning of the act, and the license therefor shall be known as a barroom license.

In applying to the excise board for a license to sell intoxicating liquors in the District, certain preliminary conditions and requirements are prescribed to be complied with in order to obtain the license. The applicant is required to present a petition which shall contain: (1) The name and residence of the applicant, and the length of time that he has resided in the District; (2) The particular place for which a license is desired, designating the name of the street and number, if practicable, and if not, by such other description as will definitely locate the same; (3) The name of the owner of the premises where the business is to be carried on; (4) A statement that the applicant is a citizen of the United States, and not less than twenty-one years of age, and that such applicant has not, since the passage of the act, been convicted of violating the laws relating to the sale of intoxicating liquor, or laws for the prevention of gambling in this District; (5) The petition to be verified by the oath of the

petitioner, and if he swears falsely his license to be revoked, and, upon conviction, to suffer the punishment for perjury; (6) That he is not the owner of or licensee in any such license then in force; (7) That he intends to carry on such business for himself and not as an agent of any other person, and that, if so licensed, he will carry on such business for himself, and not as the agent of any other person; (8) That he intends to superintend in person the management of the business licensed, and that, if so licensed, he will so superintend in person the management of the business so licensed.

And in another section of the act it is provided, that in the cities of Washington and Georgetown it shall be the duty of every applicant for a barroom license to present to the excise board with his application the written permission of a majority of the persons owning real estate, and a majority of the residents keeping house on the side of the square where it is desired to locate such business and on the confronting side of the square fronting opposite the same; and if the location of such barroom is on a corner and has an entrance thereon, such consent will be required from such owners and residents on both streets; and in that portion of the District lying outside of said cities of Washington and Georgetown, such applicant shall present such permission from a majority of the persons owning real estate and of residents keeping house within the space of 250 feet of the street or road on each side of the place where it is desired to locate such business, and within a similar space on the side of the street or road fronting opposite such place. And no person obtaining such license is allowed to transfer the same to another person, without the written consent of the excise board, and upon the transferee obtaining the consent of a majority of the real estate owners and residents as provided in the clause of the section of the act just quoted.

In another section of the act it is provided, that every person receiving a license to sell under the act shall frame it under a glass and place it in a conspicuous place in his or her chief place of sale of such liquor, so that any one entering such place of sale may easily read such license. And

by another section it is provided, that all applicants for licenses and persons holding licenses shall allow the duly authorized agent or officer of the excise board full opportunity and every facility to examine, at any time during business hours, the premises where intoxicating liquor is sold, and for which a license is asked, or has been granted.   The ·act prohibits the sale of liquor to minors, or to drunkards, or to persons in the habit of getting drunk; and no intoxicating liquors are allowed to be sold between twelve o'clock midnight and four o'clock in the morning.

These various provisions of the statute are cited as indicative of the intention of Congress in the passage of the act. There is no word or sentence in the act to show that there was any express or definite intention on the part of Congress to include within its provisions the restaurants in the Capitol, and thus to modify the rules of the Houses of Congress and to transfer the regulations of the restaurants from the committees of the Houses of Congress to the agents and officers of the municipal government of the District of Columbia, so far as the right and privilege of selling intoxicating liquors may be concerned.   As we perceive from the provisions of the statute cited, large powers and discretion are delegated to and conferred upon the excise board, both as to the qualification of the applicant for license and over the place for which license may be granted or refused.   It is contended, however, that, as the Capitol restaurants are located and carried on within the District, and there being no express exception of them from the operation of the statute, upon the very broad and comprehensive terms employed in the act, they are embraced and made subject to license.   But these restaurants are, by the rules to which we have referred, placed under the control and regulation of the respective committees of the Houses of Congress, and are conducted primarily for the use and convenience of members; and the defendants, the keepers of the restaurants, are *quasi* agents or officers of the respective houses.   And while it is entirely competent to Congress to subject these restaurant-keepers to license by a general license law for the entire District, yet

to do that would require an express declaration of such purpose on the part of Congress, or such ground apparent in the provisions of the law as would warrant a clear implication of the intention of Congress to impose the license; and the warrant for such implication we think entirely absent from the act of 1893, Ch. 204. By no other means would it be proper to infer that the two Houses of Congress intended to modify or restrict their respective standing rules, and withdraw from their committees the general power of regulation conferred, with respect to the sale of liquor in the restaurants. Indeed, all the provisions of the act would appear clearly to negative the contention that the act was intended to apply to the Congressional restaurants in the Capitol. These restaurants have been in use and operation for near a half century, Congress having provided rooms for them; and it is agreed that they are kept primarily for the use and convenience of the members of Congress. The modern definition of a restaurant is, "An establishment for the sale of refreshments, both food and drink;" Cent. Dict.; or, according to another definition,— " a place for refreshment; a house where liquors and cooked food are sold." Encyclopædia Dict. The restaurants in the Capitol have been conducted according to these definitions from their origin, as shown by the actions of the different Houses of Congress. Several efforts have been made from time to time to restrict or prevent the sale of intoxicating liquors in the restaurants of the Capitol, but they have not been successful; and we think if it had been the intention of Congress to embrace these restaurants in the provisions of the act of 1893, Ch. 204, it would have been so expressly declared.

But there are other considerations that induce to this conclusion. We do not think it was the intention of Congress to declare the restaurants in the Capitol common barrooms, as they would be, under the act of 1893, if to sell beer or other liquors, they are required to be licensed. Nor do we suppose it was the intention of Congress that the restaurants should, at any time, be subject to the examination and inspection of any agent or officer that the excise board might

direct to perform such duty. And if the committees, under the rules, were to select persons to keep the restaurants without the qualifications prescribed by the license act of 1893, we do not suppose it was the intention of Congress to declare such selections to be void, or that such selection should be defeated by the excise board, with respect to their power to sell liquor in the restaurants.

In addition to these considerations in the construction of the act, the course of conduct of the municipal government of the District, in the non-assertion of, or rather the failure to assert the right, to exact a license from the keepers of the Capitol restaurants, is not without its decided significance. The general license act, passed by the legislative assembly of this District, August 23, 1871, by virtue of authority derived from Congress, in its sections 1, 10, and 11, contained terms as comprehensive and as prohibitive as those contained in the act of 1893, and very much of the same import; and yet it was never contended or supposed that the provisions of that act applied to the restaurants in the Capitol, notwithstanding they were within the limits of the District, and not excepted from the operation of the terms of the act. That act remained in force until it was repealed by the act of 1893, under which the present prosecutions were instituted, and no prosecution was ever attempted under it, though the restaurants in the Capitol were all the while selling liquor. Nor has there ever been an attempt to maintain a prosecution under the act of 1893 until the present proceeding, though if the act had applied its provisions were being constantly violated.

We think there is no foundation for the prosecution, and, therefore, the judgments of the court below must be reversed, and the cause be remanded that the informations may be quashed; and it is so ordered.

*Judgment reversed, and cause remanded.*