# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 13, 2014          Decided May 8, 2015

No. 14-5012

CHARLES B. RANGEL,
APPELLANT

v.

JOHN A. BOEHNER, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00540)

*Jay Goldberg* argued the cause and filed briefs for the appellant.

*Isaac B. Rosenberg*, Assistant Counsel, United States House of Representatives, argued the cause for the appellees. *Kerry W. Kircher*, General Counsel, *William Pittard*, Deputy General Counsel, *Todd B. Tatelman*, *Mary Beth Walker*, *Eleni M. Roumel*, Assistant Counsel, *John M. Faust* and *Richard Sauber* were with him on brief. *Mark T. Stancil* entered an appearance.

Before: HENDERSON, GRIFFITH and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Public service has its benefits and its burdens. Congressmen, for example, enjoy absolute immunity from suit for their conduct in the legislative arena. That same immunity, however, prevents them from airing their legislative disagreements in a judicial forum. Representative Charles Rangel asks this Court to review his 2010 censure by the United States House of Representatives. But the Constitution—specifically, the Speech or Debate Clause—prevents us from doing so. Rangel must vindicate his reputation in the one court that can hear his claim: the court of public opinion. We affirm the district court's dismissal of his complaint.

## I.

Charles B. Rangel is the United States Representative for the 13th Congressional District of New York, a position he has held for more than four decades. In 2007, the Democratic Party assumed control of the House and Rangel became chairman of the Ways and Means Committee. Shortly into his tenure, however, Rangel was accused of numerous ethical improprieties. The House Committee on Ethics (Ethics Committee)[1] empanelled investigatory and adjudicatory subcommittees to look into the allegations. In November 2010, the adjudicatory subcommittee found by "clear and convincing" evidence that Rangel had committed eleven ethical violations, including improper solicitation of

---

[1] At the time, the House Committee on Ethics was named the Committee on Standards of Official Conduct. *See Committee History*, COMMITTEE ON ETHICS, https://ethics.house.gov/about/committee-history (last visited Apr. 15, 2015). For convenience, we use its current name.

donations, failure to disclose financial information, improper use of House resources, receipt of improper favors and failure to pay taxes. *See* H.R. REP. NO. 111-661, pt.1, at 7–14 (2010). The full Ethics Committee adopted these findings and recommended a punishment of censure.[2] The House agreed by a vote of 333–79; and on December 2, 2010, the House Speaker read the censure resolution on the House floor while Rangel stood in the well. *See* 156 CONG. REC. H7891–99 (daily ed. Dec. 2, 2010).

Seven months later, POLITICO.COM published an article that implicated the Ethics Committee's investigation of Rangel. *See* John Bresnahan, *Did Ethics Staff Taint Maxine Waters Probe?*, POLITICO (July 18, 2011 4:40 AM), http://www.politico.com/news/stories/0711/59225.html. The article contained a leaked memorandum authored by the Committee's former Chief Counsel. The memorandum claimed that two Ethics Committee staffers engaged in impermissible *ex parte* communications and distributed damaging information about Rangel to the Republican Members of the adjudicatory subcommittee. Rangel believes

---

[2] The House disciplines its Members in three main ways: reprimand, censure and expulsion. *See generally* JACK MASKELL, CONG. RESEARCH SERV., RL 31382, EXPULSION, CENSURE, REPRIMAND, AND FINE: LEGISLATIVE DISCIPLINE IN THE HOUSE OF REPRESENTATIVES 2 (2013). Reprimand is the mildest punishment: a majority of the House passes a resolution that disapproves of the Member's conduct. *Id.* at 13. Expulsion is the harshest sanction and requires a two-thirds vote of the House. *See* U.S. CONST. art. I, § 5, cl. 2. Censure falls somewhere in the middle. A majority of the House must approve a censure resolution and, once it does, the Speaker reads the resolution aloud while the censured Member stands in the well of the House. MASKELL, *supra*, at 10. Other than Rangel, the House has censured only twenty-two of its Members. *Id.* at 11.

this back-channeling irrevocably tainted his hearing and, ultimately, his censure.

Rangel filed a complaint in the district court, challenging his censure as a violation of the House Rules and the Fifth Amendment Due Process Clause. He sued the former Chair, Ranking Member and Republican Members of the House Ethics Committee; the former Chief Counsel and the two aforementioned Committee staffers; and, "to effectuate relief," Compl. 10 ¶ 11, the current Speaker and Clerk of the House. The defendants responded with a joint motion to dismiss. The district court granted the motion and dismissed Rangel's complaint, concluding that (1) Rangel lacked Article III standing, (2) the complaint presented a nonjusticiable political question and (3) the defendants were immune from suit under the Speech or Debate Clause. *See Rangel v. Boehner*, 20 F. Supp. 3d 148, 159–83 (D.D.C. 2013). Our review is *de novo*. *Barr v. Clinton*, 370 F.3d 1196, 1201 (D.C. Cir. 2004).

## II.

The district court dismissed Rangel's complaint on three grounds—all jurisdictional. *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) (Article III standing); *Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1262 (D.C. Cir. 2006) (political question doctrine); *Howard v. Office of Chief Admin. Officer of U.S. House of Reps.*, 720 F.3d 939, 941 (D.C. Cir. 2013) (Speech or Debate Clause). We can therefore address them in any order. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("there is no mandatory sequencing of jurisdictional issues" (quotation marks omitted)). We begin and end with the simplest ground to affirm the district court: the Speech or Debate Clause. *See La. Envtl. Action Network v. Browner*, 87

F.3d 1379, 1385 (D.C. Cir. 1996) ("[A]s precedent and prudence counsel us to avoid unnecessary dicta, . . . we see substantial reason not to review each element of justiciability in a dispute that we ultimately conclude does not lie within our jurisdiction." (citations omitted)).

The Speech or Debate Clause provides:

> The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place.

U.S. CONST., art. I, § 6, cl. 1. The English Bill of Rights, enacted in the wake of the Glorious Revolution of 1688, contained a nearly identical provision. *See* Bill of Rights, 1689, 1 W. & M., 2d Sess., c. 2 ("[T]he freedom of speech and debates or proceedings in Parliament ought not to be impeached or questioned in any court or place out of Parliament."). On this side of the Atlantic, the Philadelphia Convention adopted the "speech or debate" clause without much of either. *See United States v. Johnson*, 383 U.S. 169, 177 (1966) ("The Speech or Debate Clause of the Constitution was approved at the Constitutional Convention without discussion and without opposition."); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) ("Freedom of speech and action in the legislature was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation.").

The Clause reflects the Founders' belief in legislative independence. *United States v. Brewster*, 408 U.S. 501, 524 (1972) ("[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process."); *see also* JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED

STATES § 863 (1833) ("freedom of speech and debate" is a "great and vital privilege," "without which all other privileges would be comparatively unimportant, or ineffectual"). Although criminal liability was the "chief fear" of our forebears, *Johnson*, 383 U.S. at 182, the Speech or Debate Clause also provides absolute immunity from civil suit. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502–03 (1975); *see also Powell v. McCormack*, 395 U.S. 486, 502–03 (1969) ("[T]he clause not only provides a defense on the merits but also protects a legislator from the burden of defending himself."). The prospect of civil liability lessens the ability of the Members of the Congress to "represent the interests of their constituents," *Powell*, 395 U.S. at 503, and litigation itself "creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks," *Eastland*, 421 U.S. at 503. Such litigation also undermines the separation of powers. *See id.*; *Johnson*, 383 U.S. at 178 (Judiciary should not "possess directly or indirectly, an overruling influence over the [Congress] in the administration of [its] respective powers" (quoting THE FEDERALIST No. 48 (James Madison))).

The Supreme Court has consistently read the Speech or Debate Clause "broadly" to achieve its purposes. *Eastland*, 421 U.S. at 501; *see also Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979) ("the Court has given the Clause a practical rather than a strictly literal reading"). Although the Clause refers to "Senators and Representatives," it also covers legislative aides. *See Gravel v. United States*, 408 U.S. 606, 618 (1972). And although the Clause speaks of "Speech or Debate," it extends further to all "legislative acts." *Doe v. McMillan*, 412 U.S. 306, 312 (1973). An act is "legislative" if it is "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880). More specifically:

> The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625.

We look to Rangel's complaint to determine whether he challenges legislative or nonlegislative conduct. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Broadly speaking, Rangel asks us to review a congressional disciplinary proceeding—a "legislative" matter that "the Constitution places within the jurisdiction of [the] House," *Gravel*, 408 U.S. at 625. *See* U.S. CONST., art. I, § 5, cl. 2 ("Each House may . . . punish its Members for disorderly Behaviour."); *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1351 (D.C. Cir. 1975) (Congress's "execution of internal rules" is "legislative"). Even at the atomic level, the specific conduct that Rangel challenges is also legislative. *See Hutchinson*, 443 U.S. at 133 (preparing committee reports); *id.* (voting); *McMillan*, 412 U.S. at 311 (conducting hearings); *Eastland*, 421 U.S. at 504 (conducting investigations); *McSurely v. McClellan*, 553 F.2d 1277, 1296–97 (D.C. Cir. 1976) (*en banc*) ("use of . . . documents by the committee staff in the course of official business," "[Congressman's] or his aide's conduct at [a] subcommittee meeting," "communications between the [Congressman] and his aide . . . related to [a] meeting or any other legislative act"); *Howard*, 720 F.3d at 946 ("staff members' preparations for legislative activities"). Accordingly, the defendants'

actions fall comfortably within the scope of the Speech or Debate Clause.

Rangel offers two responses. Both, however, are plainly foreclosed by Supreme Court precedent.

First, Rangel contends that the defendants' conduct cannot be "legislative" because it was, in his view, *illegal*. This "familiar" argument—made in almost every Speech or Debate Clause case—has been rejected time and again. *Eastland*, 421 U.S. at 510; *see also id.* at 508–10 (surveying cases). An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, *Kilbourn*, 103 U.S. at 203, or even the Constitution, *McMillan*, 412 U.S. at 312–13; *Eastland*, 421 U.S. at 509–10. Such is the nature of absolute immunity, which is—in a word—absolute. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998) ("The privilege of absolute immunity would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader." (brackets and quotation mark omitted)); *Eastland*, 421 U.S. at 508–09 ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it."). Although absolute immunity creates "a potential for abuse," that potential "was the conscious choice of the Framers buttressed and justified by history." *Eastland*, 421 U.S. at 510 (quotation marks omitted); *see also Brewster*, 408 U.S. at 516 ("[T]he Clause is a very large, albeit essential, grant of privilege. It has enabled reckless men to slander and even destroy others with impunity."). Instead of looking into the defendants' "motive or intent," the standard for determining whether an act is legislative "turns on the nature of the act" itself. *Bogan*, 523 U.S. at 54; *see also Johnson*,

383 U.S. at 180 ("[A] charge . . . that the Congressman's conduct was improperly motivated . . . is precisely what the Speech or Debate Clause generally forecloses from . . . judicial inquiry."). As earlier discussed, the conduct here was legislative in nature.

Second, Rangel asserts—in a single sentence with no citation to authority—that the two committee staffers "are not entitled to congressional immunity." Appellant's Br. 30. But this argument runs headlong into *Gravel*. *See* 408 U.S. at 618 ("[T]he Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself.").[3] In *Gravel*, the Supreme Court determined that a Senator's *personal* staffer qualified for Speech or Debate Clause immunity because

> it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause—to prevent intimidation of legislators by the Executive and accountability before a possibly

---

[3] Of course, the Speech or Debate Clause is technically "the privilege of the [Member]" and congressmen can therefore "waive[]" the immunity of their aides. *Gravel*, 408 U.S. at 621–22 & n.13. Rangel does not allege any such waiver here.

> hostile judiciary—will inevitably be diminished and frustrated.

*Id.* at 616–17 (citation omitted). This observation rings equally true for *committee* staffers. *See generally* WALTER J. OLESZEK, CONGRESSIONAL PROCEDURES AND THE POLICY PROCESS 145 n.55 (2014) ("Members of Congress rely heavily on committee staff for assistance in organizing hearings, selecting witnesses, and drafting bills, as well as for many other key support functions."); CQ PRESS, GUIDE TO CONGRESS 698 (7th ed. 2013) ("[M]embers of the Senate and House need the support and advice of staff, both on committees and in their own offices, to carry out their jobs."). Indeed, the Supreme Court has extended the Speech or Debate Clause to aides from all walks of legislative life, including committee staffers. *See, e.g.*, *Eastland*, 421 U.S. at 507 (chief counsel to Senate subcommittee); *McMillan*, 412 U.S. at 309, 312 (clerk, staff director, counsel, consultant and investigator of House committee). Then-Judge Ruth Bader Ginsburg summarized the case law well: "The key consideration, Supreme Court decisions teach, is the *act* presented for examination, not the *actor*." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984) (emphases added); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 810 (1982) ("in general our cases have followed a 'functional' approach to [legislative] immunity"). Because their conduct was legislative, the Speech or Debate Clause protects the Committee staffers in this case just as much as it does the Members.

In sum, the Speech or Debate Clause prevents us from entertaining this action. The same legislative immunity would presumably protect Rangel if he ever found himself on the other side of the "v." For now, it compels dismissal of his suit. We affirm the district court's decision on this ground and have no call to consider the other defects it found in Rangel's complaint.[4]

*So ordered.*

---

[4] We also affirm the dismissal of Rangel's complaint with respect to the Speaker and the Clerk. Rangel concedes that they committed no wrongdoing, Compl. 17 ¶ 28; he instead names them as nominal defendants only "to effectuate relief, should it be ordered by this court." *Id.* at 10 ¶ 11. Because relief is unavailable here due to the other defendants' immunity, there is nothing for the Speaker or the Clerk to effectuate and, by Rangel's own admission, they should be dismissed. We take no position on whether the relief sought from these two defendants—removal of Rangel's censure "from The [House] Journal . . . and . . . any other records of the House," *id.* at 34 ¶ 108—might be barred by the Speech or Debate Clause. *See Gregg v. Barrett*, 771 F.2d 539, 542–43 (D.C. Cir. 1985).