# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 2, 2020          Decided July 20, 2021

No. 20-5240

KEVIN OWEN MCCARTHY, THE HONORABLE, IN HIS OFFICIAL CAPACITY AS HOUSE MINORITY LEADER AND MEMBER OF THE UNITED STATES HOUSE OF REPRESENTATIVES FOR THE CALIFORNIA 23RD CONGRESSIONAL DISTRICT, ET AL.,
APPELLANTS

v.

NANCY PELOSI, THE HONORABLE, IN HER OFFICIAL CAPACITY AS SPEAKER OF THE HOUSE OF REPRESENTATIVES AND MEMBER OF THE UNITED STATES HOUSE OF REPRESENTATIVES FOR THE CALIFORNIA 12TH CONGRESSIONAL DISTRICT, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01395)

———

*Charles J. Cooper* argued the cause for appellants. With him on the briefs were *Michael W. Kirk*, *Harold S. Reeves*, *J. Joel Alicea*, *Steven J. Lindsay*, and *Elliot S. Berke*.

*John C. Eastman* and *Anthony T. Caso* were on the brief for *amici curiae* Center for Constitutional Jurisprudence, et al. in support of appellants.

2

*Douglas N. Letter*, General Counsel, U.S. House of Representatives, argued the cause for appellees. With him on the brief were *Todd B. Tatelman*, Principal Deputy General Counsel, *Megan Barbero* and *Josephine T. Morse*, Deputy General Counsel, *Adam A. Grogg*, Assistant General Counsel, *William E. Havemann*, Associate General Counsel, *Michael R. Dreeben*, *Samantha M. Goldstein*, *Kendall Turner*, *Ephraim A. McDowell*, *Anna O. Mohan*, and *Alec Schierenbeck*.

Before: SRINIVASAN, *Chief Judge*, ROGERS and WALKER, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In response to the COVID-19 pandemic, the House of Representatives adopted a Resolution enabling Members who are unable to attend proceedings in person to cast their votes and mark their presence by proxy. A number of Representatives and constituents challenge the constitutionality of the Resolution. They argue that various constitutional provisions compel in-person participation by Representatives in all circumstances, including during a pandemic.

The district court dismissed the suit for lack of jurisdiction. The court concluded that the Resolution and its implementation lie within the immunity for legislative acts conferred by the Constitution's Speech or Debate Clause. We agree, and we thus affirm the district court's dismissal of the case.

3

I.

A.

In March 2020, the World Health Organization declared COVID-19 a pandemic. H. Rep. No. 116-420, at 2 (2020). In response to the unprecedented public-health crisis, the United States House of Representatives adopted House Resolution 965 in May 2020. The Resolution establishes a process under which House Members can cast their votes and mark their presence by proxy if they cannot personally attend proceedings due to the public-health emergency. *See* H.R. 965 (May 15, 2020).

The Resolution states:

> [A]t any time after the Speaker or the Speaker's designee is notified by the Sergeant-at-Arms, in consultation with the Attending Physician, that a public health emergency due to a novel coronavirus is in effect, the Speaker or the Speaker's designee, in consultation with the Minority Leader or the Minority Leader's designee, may designate a period (hereafter in this resolution referred to as a "covered period") during which a Member who is designated by another Member as a proxy . . . may cast the vote of such other Member or record the presence of such other Member in the House.

*Id*. § 1(a). A covered period automatically ends in 45 days, but the Speaker or her designee may extend the period for an additional 45 days if the Speaker "receives further notification from the Sergeant-at-Arms, in consultation with the Attending

Physician, that the public health emergency due to a novel coronavirus remains in effect." *Id*. § 1(b)(1)–(2).

Any Member "whose presence is recorded by a designated proxy," or whose vote is cast by a proxy, "shall be counted for the purpose of establishing a quorum." *Id*. § 3(b). To designate a proxy, a Member submits to the Clerk of the House a "signed letter . . . specifying by name the Member who is [so] designated." *Id*. § 2(a)(1). The letter must state that the Member designating a proxy is unable to attend proceedings in person because of the public-health emergency. *Id*. § 2(a)(1); Remote Voting by Proxy Regulations Pursuant to House Resolution 965 § A.1.i, 166 Cong. Rec. H2257 (daily ed. May 15, 2020).

Members cannot grant a "general proxy" giving another Member blanket authority to vote for them. Instead, a Member acting as a proxy must "obtain an exact instruction" in writing that is specific to a particular vote or quorum call. H.R. 965 § 3(c)(1), (c)(6). And if the instruction pertains to a bill whose text subsequently changes, no proxy vote can be cast unless there is a new instruction. Remote Voting by Proxy Regulations § C.4, 166 Cong. Rec. H2257.

A Member can act as a proxy for a maximum of ten other Members at any one time. H.R. 965 § 2(a)(4). Members serving as proxies must announce on the House floor which remote Members they represent and what instructions they have received. *Id*. § 3(c)(2). The Clerk of the House maintains a publicly available list of proxy designations. *Id.* § 2(b).

B.

On May 20, 2020, Speaker of the House Nancy Pelosi authorized proxy voting pursuant to the Resolution for a period

of 45 days. There have since been several extensions, the most recent of which expires on August 17, 2021. Press Release, *Dear Colleague to All Members on Extension of Remote Voting 'Covered Period,'* SPEAKER OF THE HOUSE NANCY PELOSI (June 28, 2021), https://www.speaker.gov/newsroom/62821-0.

On May 26, 2020, House Minority Leader Kevin McCarthy—along with dozens of other Representatives and several constituents—challenged the constitutionality of the Resolution in a lawsuit against Speaker Pelosi, the Clerk of the House, and the House Sergeant-at-Arms. The suit contends that various constitutional provisions require Members to be physically present on the House floor in order to count towards a quorum and cast votes. The plaintiffs seek a declaration that House Resolution 965 is unconstitutional, as well as preliminary and permanent injunctions barring the defendants from implementing proxy voting in the House.

The defendants moved to dismiss the action, arguing that it is precluded by the Constitution's Speech or Debate Clause, and alternatively, that the plaintiffs lack standing to bring it. The district court granted the motion on the ground that the Speech or Debate Clause bars consideration of the suit. The plaintiffs now appeal.

## II.

The defendants argue that we should not reach the merits of the constitutional challenge in this case for the same two reasons they advanced in the district court: first, the Speech or Debate Clause prevents us from considering the challenge; and second, the plaintiffs lack standing. Both those arguments state jurisdictional objections. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015). And while we must resolve jurisdictional questions before we can address the merits of a dispute, we can

take up jurisdictional issues in any order. *Id.*; *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). We opt to begin with the question of Speech-or-Debate-Clause immunity. Because we agree with the district court that the Clause bars consideration of the plaintiffs' suit, we have no need to consider whether they have standing.

The Speech or Debate Clause states that "Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1. The Speech or Debate Clause occasioned neither speech nor debate at the Constitutional Convention: the Clause gained approval "without discussion and without opposition." *United States v. Johnson*, 383 U.S. 169, 177 (1966); *Rangel*, 785 F.3d at 22.

The central object of the Speech or Debate Clause is to protect the "independence and integrity of the legislature." *Johnson*, 383 U.S. at 178. The Clause does so by preventing "intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Gravel v. United States*, 408 U.S. 606, 617 (1972).

While the Clause by terms prohibits "Speech or Debate in either House" from being "questioned in any other Place," *see* U.S. CONST. Art. I, sec. 6, it is long settled that the Clause's protections range beyond just the acts of speaking and debating. To "confine the protections of the Speech or Debate Clause to words spoken in debate would be an unacceptably narrow view." *Gravel*, 408 U.S. at 617. Rather, the "Supreme Court has consistently read the Speech or Debate Clause 'broadly' to achieve its purposes." *Rangel*, 785 F.3d at 23 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975)); *see Gravel*, 408 U.S. at 624.

Of particular salience, the Clause applies not just to speech and debate in the literal sense, but to all "legislative acts." *Doe v. McMillan*, 412 U.S. 306, 311–12 (1973). Legislative acts are those "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *see Gravel*, 408 U.S. at 624. Consequently, while the "heart of the Clause is speech or debate in either House," the Clause reaches matters forming "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.

Additionally, although the Clause's terms expressly prohibit questioning of "Senators or Representatives" in connection with legislative acts, it is well established that the Clause's protections extend to Congressional aides and staff. *See id.* at 618, 621; *Rangel*, 785 F.3d at 24–25. The Clause applies to aides and staff "insofar as [their] conduct . . . would be a protected legislative act if performed by [a] Member." *Gravel*, 408 U.S. at 618. The "key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984).

Here, the acts presented for examination are quintessentially legislative acts falling squarely within the Clause's ambit. The challenged Resolution enables Members to cast votes by proxy, and the "act of voting" is necessarily a legislative act—i.e., something "done in a session of the House by one of its members in relation to the business before it." *Gravel*, 408 U.S. at 617 (quoting *Kilbourn*, 103 U.S. at 204); *see id.* at 624 ("voting by Members" is "protected"); *Walker*,

733 F.2d at 929 (Clause covers "such activity integral to lawmaking as voting").

House rules governing how Members may cast their votes thus concern core legislative acts. And here, the acts sought to be enjoined by the plaintiffs' suit all involve implementation of proxy voting pursuant to the Resolution. The suit seeks to bar: (i) the Sergeant-at-Arms from notifying the Speaker of the existence of a public health emergency due to COVID-19—the triggering condition for proxy voting under the Resolution; (ii) the Speaker from designating a covered period in which proxy voting will be permitted; (iii) the Clerk from accepting proxy letters from Members and maintaining a proxy list; and (iv) the Clerk from tabulating and recording proxy votes and counting proxy Members as present for quorum purposes.

Because those actions all effectuate proxy voting under the Resolution, they form "an integral part of the . . . processes by which Members participate in . . . House proceedings with respect to the . . . passage or rejection of proposed legislation." *Gravel*, 408 U.S. at 625. Indeed, we are hard-pressed to conceive of matters more integrally part of the legislative process than the rules governing how Members can cast their votes on legislation and mark their presence for purposes of establishing a legislative quorum.

Our decision in *Consumers Union of United States, Inc. v. Periodical Correspondents' Association*, 515 F.2d 1341 (D.C. Cir. 1975), provides an instructive frame of reference. *Consumers Union* involved a challenge to congressional rules requiring members of the press to apply to gain access to the House and Senate press galleries. *Id*. at 1342, 1344–45. We found the challenge barred by the Speech or Debate Clause, concluding that administration of seating in the press galleries is a legislative act. *Id*. at 1350.

We explained that, under the Supreme Court's decision in *Gravel*, legislative acts for purposes of Speech-or-Debate-Clause immunity include both (i) matters pertaining "to the consideration and passage or rejection of proposed legislation," and (ii) "other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625; *Consumers Union*, 515 F.2d at 1349–50. Administration of seating in the press galleries, we specifically acknowledged, did not fall within the first of those categories. *Consumers Union*, 515 F.2d at 1350. But we concluded it fell within the second category, explaining that "*Gravel* . . . in delineating legislative acts, . . . said that . . . the Clause [also] applied to 'other matters which the Constitution places within the jurisdiction of either House.'" *Id.* at 1351 (quoting *Gravel*, 408 U.S. at 625).

This case, if anything, more centrally involves legislative acts than did *Consumers Union*. As in that case, the challenged actions here fall within *Gravel*'s second category, i.e., matters that the Constitution places within the House's jurisdiction: the House adopted its rules for proxy voting under its power to "determine the Rules of its Proceedings," U.S. CONST. art. I, § 5, cl. 2. But while both this case and *Consumers Union* thus implicate *Gravel*'s second category, this case, unlike *Consumers Union*, also implicates *Gravel*'s first category: rules enabling proxy voting squarely concern "the direct business of passage or rejection of proposed legislation." *Consumers Union*, 515 F.2d at 1351; *see Gravel*, 408 U.S. at 625. If the Speech or Debate Clause covers the administration of seating in the press galleries, in short, it must also cover the administration of voting by Members.

A comparison between this case and the circumstances we faced in *Walker v. Jones*, 733 F.2d 923, is also illuminating.

*Walker* involved a suit brought by the general manager of the House Restaurant System alleging that a House Member had terminated her employment because of her gender. *Id*. at 925. We rejected the House Member's contention that the Speech or Debate Clause barred the suit. "To characterize personnel actions related to [food] services as 'legislative' in character," we determined, "is to stretch the meaning of the word beyond sensible proportion." *Id.* at 931. By the same token, to characterize actions related to the casting of votes by Members as *not* "legislative" in character, we believe, would be to resist the meaning of the word beyond sensible proportion.

In arguing nonetheless that the Speech or Debate Clause does not bar their suit, the plaintiffs in this case seek to draw a fundamental divide between the enactment of legislation and the execution of it. As the plaintiffs see it, the acts of voting on and adopting the Resolution lie within the Clause's zone of immunity, but acts undertaken in implementing the Resolution do not. In their view, then, the Clause does not insulate from judicial review the conduct they seek to enjoin—e.g., the Sergeant-at-Arms's notifying the Speaker of a public health emergency, the Speaker's ensuing designation of a period in which proxy voting may occur, and the Clerk's acceptance of proxy letters and counting of proxy votes. Those actions, in the plaintiffs' conception, merely implement the Resolution and thus fall outside the Speech or Debate Clause's protections.

That argument does not withstand scrutiny. The salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it. The pivotal distinction instead is between legislative acts and non-legislative acts. So in *Consumers Union*, the Clause encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules. *See* 515 F.2d at 1350–51. The suit there sought to

address, among other things, a specific decision to deny access to a particular publication in implementation of the challenged rules. *See id.* at 1345–46. That action fell within the Clause's protections, and we accordingly spoke of the Clause's applicability to conduct "enforcing internal rules of Congress" or "execut[ing] . . . internal rules." *Id.* at 1350–51. The Clause, then, encompasses the execution of legislation when the executing actions themselves constitute legislative acts. That was true in *Consumers Union* and is no less—and, if anything, more—true here.

The three decisions principally relied on by the plaintiffs—*Kilbourn*, 103 U.S. 168, *Dombrowski v. Eastland*, 387 U.S. 82 (1967), and *Powell v. McCormack*, 395 U.S. 486 (1969)—are not to the contrary. In each of those cases, "the speech or debate privilege was held unavailable to certain House and committee employees." *Gravel*, 408 U.S. at 618 (discussing *Kilbourn*, *Dombrowski*, and *Powell*). As the Supreme Court has explained in specific reference to those three decisions, they "do not hold that persons . . . are beyond the protection of the Clause when they perform or aid in the performance of legislative acts." *Id.* The Court thus necessarily considered the persons whose conduct was at issue in those cases to have been uninvolved "in the performance of legislative acts."

To be sure, the acts in question in those cases could be described as the execution of legislative action. *See id.* at 618– 20. *Kilbourn*, for instance, concerned a House employee's arrest of a particular person in execution of a resolution authorizing the arrest of that individual. *Id.* at 618. And conduct carrying out legislation is beyond the Speech or Debate Clause's compass when it is not itself a legislative act, as was the case in *Kilbourn*: the arrest was not "an integral part" of the "processes by which Members participate in . . .

House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625.

But whereas the resolution in *Kilbourn* authorized the arrest of a third party, the resolution in this case establishes internal rules governing the casting of votes by Members. And conduct implementing the latter resolution—including the Clerk's counting and recording of proxy votes—is itself a legislative act, pertaining directly "to the consideration and passage or rejection of proposed legislation." *Id.* That conduct thus falls comfortably within the immunity afforded by the Speech or Debate Clause.

\* \* \* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*