# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 10, 2021      Decided January 25, 2022

No. 21-5080

ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC.
AND KATARINA VERRELLI, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,
APPELLANTS

v.

ADAM SCHIFF, IN HIS INDIVIDUAL CAPACITY AND HIS OFFICIAL
CAPACITY AS A MEMBER OF CONGRESS FOR THE 28TH
CONGRESSIONAL DISTRICT OF CALIFORNIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00106)

*Lawrence J. Joseph* argued the cause and filed the briefs for appellant.

*Todd B. Tatelman*, Principal Deputy General Counsel, U.S. House of Representatives, argued the cause for appellee. With him on the brief were *Douglas N. Letter*, General Counsel, *Sarah Clouse*, Associate General Counsel, and *Brooks M. Hanner*, Associate General Counsel.

2

Before: ROGERS and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Association of American Physicians and Surgeons appeals the dismissal of its complaint for lack of Article III standing. The Association, joined by an individual, sued a Member of Congress who wrote to several technology and social media companies before and during the COVID-19 pandemic expressing concern about vaccine-related misinformation on their platforms and inquiring about the companies' policies for handling such misinformation. The Association, which purveys vaccine-related information online, alleged that the inquiries prompted the technology companies to disfavor and deprioritize its vaccine content, thereby reducing traffic to its web page and making the information more difficult to access. Because appellants have not established that they have standing, the court affirms the dismissal of the complaint.

**I.**

The Association of American Physicians and Surgeons maintains a website and publishes the Journal of American Physicians and Surgeons, both of which host information concerning "important medical, economic, and legal issues about vaccines," Am. Compl. ¶ 10. According to the Association, its perspective on these issues should not be considered "anti-vaccine," but rather in favor of "informed consent based on disclosure of all relevant legal, medical, and economic information." *Id.* ¶ 3. Representative Adam B. Schiff is a Member of the House of Representatives from

California's 28th Congressional District and Chairman of the House Intelligence Committee.

Joined by an individual, Katarina Verrelli, who has sought vaccine-related information online, the Association sued Representative Schiff, individually and as a Member of Congress, seeking damages as well as injunctive and declaratory relief. The Association and Verrelli alleged that Representative Schiff wrote letters on February 14, 2019, to Google and Facebook "encourag[ing] them to use their platforms to prevent what [Representative] Schiff asserted to be inaccurate information on vaccines." *Id.* ¶ 68. Shortly after, Representative Schiff wrote essentially the same letter to Amazon, and thereafter posted the letters on the House.gov website in a press release as well as on the social media website Twitter. In the letters, as reproduced in the press release, Representative Schiff expressed concern about the danger of vaccine hesitancy and the prevalence of vaccine-related misinformation on internet platforms like YouTube, Facebook, and Google's search engine.[1] He stated: "As a Member of Congress who is deeply concerned about declining vaccination rates around the nation, I am requesting additional information on the steps that you currently take to provide medically accurate information on vaccinations to your users, and to encourage you to consider additional steps you can take to address this growing problem." *Id.* He requested that the companies respond to a list of questions regarding the

---

[1] Press Release, *Schiff Sends Letter to Google, Facebook Regarding Anti-Vaccine Misinformation* (Feb. 14, 2019), available at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-google-facebook-regarding-anti-vaccine-misinformation; Press Release, *Schiff Sends Letter to Amazon CEO Regarding Anti-Vaccine Misinformation* (Mar. 1, 2019), available at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-amazon-ceo-regarding-anti-vaccine-misinformation.

companies' policies about and approaches to vaccine-related misinformation. *Id.* Although the letters are not included in the Joint Appendix, the court may look to their full text that is incorporated and linked in the amended complaint. *See Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

When the House Intelligence Committee later held a hearing on "the national and election security risks of technology that allows the creation of 'fake' videos," Chairman Schiff "challenged the immunity that [the technology companies] have under Section 230 of the [Communications Decency Act]" and inquired whether Congress should make changes to that immunity. Am. Compl. ¶ 65. His comments put the technology companies "on notice that they would need to comply with [Representative] Schiff's position or risk his undertaking legislative action against . . . § 230." *Id.* ¶ 66. Representative Schiff also allegedly "negotiated the drafting and timing of his public correspondence with" the recipients of the letters "prior to finalizing and publicizing the correspondence," *id.* ¶ 12, and his "outreach" to the technology companies was a "substantial factor motivating" the following actions the companies subsequently took, *id.* The following year, on April 30, 2020, Representative Schiff posted on Twitter about another three similar letters he had sent to YouTube, Twitter, and Google's parent company, Alphabet. *Id.* ¶ 77.

According to the Association, the technology companies have taken a number of steps to disfavor and deprioritize its vaccine-related information on their platforms. For example, Google's initial response to Representative Schiff's letter indicated that the company had "put a lot of effort into curbing misinformation in our products." *Id.* ¶ 71. Google explained: "[W]e are and have been demonetizing anti-vaccination content under our longstanding harmful or dangerous

advertising policy." *Id.* Facebook's response likewise explained that its "approach . . . is to reduce the spread of inaccurate information about vaccines" and detailed some of its strategies. *Id.* In March 2019, Facebook announced a new policy of promoting links to government-sponsored information about vaccine safety in search results for vaccine-related information. That policy was implemented in September of 2019. And in May 2019, Twitter announced a new policy of placing a "pro-government" disclaimer on vaccine-related information, including search results for the Association's articles, which appellants allege carried the damaging implication that its perspective is "less credible." *Id.* ¶¶ 74–75. In August 2019, Amazon "suddenly announced [the Association's] termination from the Amazon Associates Program," which allows participants to earn commissions when web users purchase products on Amazon via a link on the participant's website. *Id.* ¶ 73. According to the Association, the circumstances of the termination "suggest[ed] either selective enforcement or an ulterior motive." *Id.* These actions by the technology companies have "significantly depressed the internet traffic to the [Association's] website." *Id.* ¶ 78. The Association further alleges that "[a]s a result of [Representative] Schiff's actions and those taken in response to Schiff's actions by interactive computer services such as Google, Facebook, and Amazon . . . , the visits to the [Association's] website declined significantly," all while traffic to the Association's non-vaccine-related content "held steady" and while visits from search engines that did not "disfavor" the Association's vaccine-related content increased. *Id.* ¶ 11.

The district court granted Representative Schiff's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because appellants lacked Article III standing and because Representative Schiff was immune from

suit for the challenged actions under the Speech or Debate Clause, *see Ass'n of Am. Physicians & Surgeons v. Schiff* ("*AAPS*"), 518 F. Supp. 3d 505, 512 (D.D.C. 2021). The Association and Verrelli appeal. This court's review is *de novo*, *Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015), and the court may "take up jurisdictional issues in any order," and need not reach other grounds where one is dispositive, *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021).

**II.**

The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). For injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). For traceability, "there must be a causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560, and the injury must not be "th[e] result [of] the independent action of some third party not before the court," *id.* (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). "[W]hen the plaintiff is not . . . the object of the government action or inaction [being] challenge[d], standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

## A.

Preliminarily, appellants suggest that they need not satisfy the usual standing requirements because they assert a First Amendment injury for which standing requirements are relaxed. They cite *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), as establishing that standing to bring First Amendment claims is subject to a "more deferential standard." Appellants' Br. 21. But in *Broadrick*, the Supreme Court held only that the "traditional rules of standing" operate differently when a plaintiff brings a facial overbreadth challenge to a statute. *Broadrick*, 413 U.S. at 611–12. Because the "very existence" of an overbroad statute may chill protected speech, the Court concluded that the need to ensure the litigants have a strong personal stake in the outcome is diminished in such a case. *Id.*

Appellants do not explain why that rationale is applicable here. They have alleged not a general chilling effect but rather an intentional effort by a government official to limit their speech in particular. Am. Compl. ¶¶ 92–94.

## B.

The Association contends that it suffers three concrete injuries that suffice to establish standing: an impairment of its ability "to negotiate and to contract with interactive computer services," Am. Compl. ¶ 18; a monetary injury from reduced web traffic that may affect its stream of donations; and a First Amendment injury based on the alleged "de-platform[ing]" of its content that harms its speech and associational interests, *id.* ¶ 11.

As for the claim that Representative Schiff interfered with the Association's ability to contract with the technology

companies, the Association has not plausibly alleged injury-in-fact. The Association maintains that Representative Schiff's actions interfered with its "free negotiations" with the technology companies. Appellants' Br. 19. But the Association never alleged that it has made any attempts at such negotiations, nor that it has concrete plans to do so in the future. "Such 'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury" that the Supreme Court has required. *Lujan*, 504 U.S. at 564. Any harm to the Association's interest in negotiating and contracting with the technology companies is therefore too speculative to support standing.

The Association appears to suggest that its preexisting contractual relationship with Amazon suffices to show its concrete plans to negotiate. Reply Br. 9. The Association was previously enrolled in the Amazon Associates Program, an "affiliate network[]" that allows "website owners to earn commissions based on their traffic." Am. Compl. ¶ 73. According to the Association, Amazon terminated its enrollment in the program in August 2019 for reasons that appeared to the Association to be pretextual. But the Association has not alleged that it took any steps to rejoin the program, nor even that it would do so if given the opportunity. The Association's previous relationship with Amazon therefore does not show the kind of specific intention to negotiate and contract with the technology companies that could establish actual, as opposed to speculative, injury-in-fact.

The Association's other claimed injuries — to its financial prospects and to its speech and associational interests — are not adequately supported by allegations that any injury is "fairly traceable" to Representative Schiff's actions, *Spokeo*, 578 U.S. at 338, even assuming the Association has plausibly

alleged actual, concrete injury-in-fact. The Association complains of being "de-platform[ed]" and "disfavor[ed]" by the social media sites and search engines through which it promotes its vaccine-related information. Am. Compl. ¶ 11. But any actions limiting the accessibility of the Association's web content were not taken by Representative Schiff; instead, as the amended complaint acknowledges, they were taken by independent third parties Facebook, Google, Amazon, Twitter, and YouTube. *Id.* ¶¶ 68–78.

Nonetheless, appellants maintain that the companies' adverse action against the Association's content is ultimately attributable to Representative Schiff's statements, which they view to have implicitly threatened and coerced the technology companies. The amended complaint appears to allege a primary theory of causation based on two sets of statements by Representative Schiff. First, Representative Schiff sent the information-gathering letters to several major technology companies, including Google, Facebook, and Amazon, and shared copies of those letters as well as the responses in press releases posted on the House.gov website and in social media posts. Second, several months later, Representative Schiff made remarks at a hearing of the House Intelligence Committee, of which he is the chair, "challeng[ing] the immunity" that certain technology companies enjoy under the Communications Decency Act, 47 U.S.C. § 230. Am. Compl. ¶ 65. According to appellants, the companies understood that Representative Schiff was threatening to support changes to Section 230 if the companies declined to comply with his "wishes on other fronts," including his concerns about "disfavored material on vaccinations on their platforms," and his statements intimidated and "coerce[d]" the companies "to censor content that he opposes." *Id.* ¶ 67.

Yet appellants' allegations have not presented a plausible account of causation. Even assuming the Association's content was indeed demoted in search results and on social media platforms, the technology companies may have taken those actions for any number of reasons unrelated to Representative Schiff. Appellants offer no causal link that suggests it was an isolated inquiry by a single Member of Congress that prompted policy changes across multiple unrelated social media platforms. The timeline of events in the amended complaint also undermines any possibility that the companies acted at Representative Schiff's behest in particular. For example, the amended complaint quotes Google's response to Representative Schiff's letter, which explained: "[W]e are *and have been* demonetizing anti-vaccination content under our longstanding harmful or dangerous advertising policy." *Id.* ¶ 71 (emphasis added). Likewise, the amended complaint itself acknowledges that several of the other adverse actions by the technology companies occurred before the June 2019 Intelligence Committee hearing. For example, Facebook announced its new policy of prioritizing government-sponsored vaccine information in search results in March 2019, *id.* ¶ 76, and Twitter introduced its search-results disclaimer directing users to government-sponsored vaccine information in May 2019, *id.* ¶ 74. Even assuming some of the policy changes to which appellants object were anticipatory in nature, the decisions by the companies seem to have occurred before Representative Schiff even sent the letters, and many took place before the hearing that purportedly coerced the companies to adopt Representative Schiff's preferences.

Generously construing the allegations of the amended complaint, the Association also appears to suggest that causation is satisfied because Representative Schiff coordinated the "drafting and timing" of the letters with the tech companies before releasing them, and that the letters were

"a substantial factor motivating" the companies' "actions to suppress vaccine-related information." *Id.* ¶ 12. But this is exactly the kind of allegation the Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). After all, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557. As in *Twombly*, these allegations are "merely consistent with," but do not "plausibly suggest[]," the kind of coordinated action that would supply a causal link between Representative Schiff's statements and the technology companies' actions. *Id.* Indeed, it is far less plausible that the companies' actions were a response to one legislator's inquiry than that they were a response to widespread societal concerns about online misinformation.[2]

## C.

Appellant Verrelli, for her part, contends she suffers a kind of First Amendment injury as well because she now finds it more difficult to access the vaccine-related content she would like to view online. Verrelli, however, is not mentioned in the argument portion of appellants' opening brief, so any contention that the district court erred in ruling that she lacks standing is forfeited. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019). In any event, her claims suffer from the same causation deficiency as those of the Association. Even assuming the kind of vaccine-related information she would like to access is more difficult to locate on her preferred web sources, she has not plausibly alleged that this is attributable to Representative Schiff's actions rather than an independent

---

[2] *See* Press Release, *Schiff Sends Letter to Google, Facebook Regarding Anti-Vaccine Misinformation* (Feb. 14, 2019), available at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-google-facebook-regarding-anti-vaccine-misinformation; H.R. Res. 179, 116th Cong. (2019).

12

decision of the technology companies. As a result, she lacks standing to sue Representative Schiff.

## III.

The district court also ruled that, apart from appellants' failure to demonstrate Article III standing, it lacked subject matter jurisdiction because Representative Schiff's challenged actions were "legislative acts" that were protected by the Speech or Debate Clause of the Constitution, U.S. CONST. art. I, § 6, cl. 1. *AAPS*, 518 F. Supp. 3d at 518–19. Because appellants have not established that they have Article III standing, the court need not reach the separate jurisdictional issue of Representative Schiff's immunity under the Speech or Debate Clause. *See Rangel*, 785 F.3d at 22. Counsel for appellants suggested at oral argument, however, that the court should address the Speech or Debate Clause issue because it is implicated in appellants' request for leave to amend the complaint for a second time. That is, if the court concludes they lack standing because any injury they suffer is attributable to "third part[ies] not before the court," *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 42), namely, the technology companies, then the court should permit them to amend the complaint to join the technology companies as defendants. But appellants acknowledge that they did not seek leave to amend in the district court. They also acknowledge that the court generally does not grant leave to amend a complaint when it was not sought in the district court. Appellants' Br. 54–55 (citing *Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 150–51 (D.C. Cir. 1994)). Further, their appellate briefs offer no reason why the court should deviate from its general practice here. To the extent counsel for appellants first argued during oral argument that seeking leave to amend to cure the amended complaint's standing deficiencies in the district court would have been futile given that court's determination that

Representative Schiff was immune from suit under the Speech or Debate Clause, Oral Arg. Audio 42:12–43:59 (Dec. 10, 2021), appellants did not alert Representative Schiff to this new argument, so it is forfeited. *Al-Tamimi*, 916 F.3d at 6.

Accordingly, because appellants offer no plausible basis to conclude that Representative Schiff's inquiries caused the technology companies to implement the policy changes to which appellants object, they have not established standing, and we affirm the district court's dismissal of their amended complaint.